RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/17/12
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DELVIN DE'MON MOORE,<br>　　　　Plaintiff<br><br>VERSUS<br><br>TERRY EVANS, et al.,<br>　　　　Defendants | CIVIL ACTION<br>SECTION "P"<br>NO. 1:11-CV-00227<br><br><br>JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983 by pro se plaintiff Delvin De'mon Moore ("Moore") on February 3, 2011 and amended on May 31, 2011 (Doc. 13) and August 1, 2011 (Doc. 21).[1] The named defendants are Terry Evans ("Evans"), Earl Banks ("Banks"), Arthur Gross ("Gross"), Captain Joe Ardoin,[2] and James Howell ("Howell"), all correctional officers at the River Correctional Center ("RCC") in Ferriday, Louisiana, Warden Pat W. Smith ("Smith") (warden of RCC), and Major Vernon White ("White") (chief of security at RCC).

Moore alleges that, while he was housed in the RCC in October 2010 through January 2011, he was denied meals, the meals he

---

[1] Moore did *not* file in forma pauperis.

[2] Apparently, the "Capt. Joe" referred to in the complaints is Capt. Joe Ardoin (Doc. 45).

received were not balanced and nutritious, he was falsely accused and convicted of possessing a cell phone, resulting in the loss of six months good time credits, his personal property (legal work) was taken and thrown away, and his grievances were not answered (Doc. 1). Moore contends he lost 60 pounds while he was incarcerated at RCC and had to buy food from the commissary (Doc. 13). For relief, Moore asks for monetary damages and reimbursement of all funds he spent at RCC, and an order that RCC officials must provide inmates with meals (Doc. 1). Moore is presently confined in the Federal Correctional Institution in Herlong, California (Doc. 32).

Moore's claims regarding the prison disciplinary conviction, lost wages, and loss of property were dismissed (Doc. 23). Moore's claims for deprivation of food and denial of access to the courts remain as to all defendants (Doc. 23).

Defendants answered the complaint (Doc. 34) and filed a motion for summary judgment (Doc. 45) which Moore has not opposed. Defendants' unopposed motion for summary judgment is now before the court for disposition.

## Law and Analysis

### Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is

no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Adequate Meals

Moore contends he was denied 216 (or more) meals and lost about 60 pounds during the time he was incarcerated in RCC.

Moore alleges that, on about October 25, 2010 at 6:15 a.m., when he was exiting the C-dorm to go to breakfast, Officer Evans slammed the door in his face, telling Moore he had taken too long (Doc. 1). Moore contends he wrote a grievance about the incident to Warden Smith, Captain Gross, and Chief White, but did not receive any responses.

Moore alleges that, on about October 26, 2010 at 6:05 a.m., Officer Howell slammed the door in Moore's fact and would not let him leave the dorm (Doc. 1). Moore contends he sent grievances to Captain Gross, Warden Smith, and Chief White, as well as Department of Corrections headquarters and did not receive any responses.

4

Moore alleges that, on October 31, 2010, Officer Evans refused to allow Moore to get his lunch because Moore did not have his I.D. card (Doc. 1).

Moore contends that, on December 10, 2010, at 6:35 a.m., Officer Howell closed the dorm door on his toe and denied him a lunch (Doc. 1). On December 14, 2010, Moore told a kitchen worker he could not eat beans because he was allergic to them (Doc. 1). Moore presented his Department of Corrections paperwork to Captain Core, to prove he was allergic to beans, and was told he would not be given anything else to eat (Doc. 1).

The state must provide an inmate with a healthy, habitable environment. This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it. French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. den., 479 U.S. 817, 107 S.Ct. 77 (1986). Also, Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999); Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); Walker v. Blackwell, 411 F.2d 23, 26 (5th Cir. 1969). Moreover, depriving a prisoner of adequate food is a form of corporal punishment for which the eighth amendment imposes limits on prison officials' power to so deprive a prisoner. Cooper v. Lubbock Cty., Tex., 929 F.2d 1078, 1083 (5th Cir. 1991). To comply with the Constitution, inmates must receive reasonably adequate food. Eason, 73 F.3d at 1327. Also, Walker, 411 F.2d at

26.

The Eighth Amendment requires that inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.' Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." Even on a regular, permanent basis, two meals a day may be adequate. Berry, 192 F.3d at 508 (denial of eight meals in seven months, with no weight loss, did not violate the Eighth Amendment), citing Green v. Ferrell, 801 F.2d 765, 770-71 (5th Cir. 1986). Also, Talib v. Gilley, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (court found it doubtful that plaintiff met the Eighth Amendment threshold where inmate missed about fifty meals in five months and lost about fifteen pounds).

Moore contends he missed over 216 meals while he was incarcerated at RCC. Since Moore's Department of Corrections Master Record shows he was transferred to RCC on December 10, 2009, and Moore admits he was transferred to the Claiborne Parish Detention Center on January 12, 2011, Moore was incarcerated at RCC for about thirteen months. In that time period, Moore would have been provided with about 1170 meals, assuming three meals per day were provided. Moore alleges he was denied 216 of those meals. Although Moore provided some specific dates on which he missed a meal, he did not provide 216 dates, and it is clear from the few dates provided that he did not miss a meal every day. Assuming

6

Moore missed 216 meals, it is apparent that he still received at least two meals per day.

Moore also contends he lost 60 pounds. However, Moore's medical record from the Claiborne Detention Center shows he weighed 268.6 pounds on June 30, 2008 (Doc. 45, p. 4/26), his medical assessment on December 11, 2009 at RCC shows he weighed 289 pounds (Doc. 45, pp. 6/26, 10/26), Moore's Department of Corrections Master Record dated November 10, 2010, shows Moore was 6'2" tall and weighed 260 pounds (Doc. 21, p. 22/26), and Moore's medical record from Huey P. Long Medical Center dated January 4, 2011 shows he weighed 293.6 pounds (Doc. 45, Tr. pp. 7/26, 12/26). Therefore, defendants' unopposed evidence shows Moore did not lose weight while he was incarcerated at RCC from October 2010 through January 2011; instead, he gained weight.

Since Moore received at least two meals per day and gained about four pounds during the thirteen months he was incarcerated at RCC, Moore has not shown he was deprived of food in violation of the Eight Amendment. Since there are no genuine issues of material fact which would preclude a summary judgment, defendants' motion for summary judgment should be granted on this issue.

<u>Access to the Courts</u>

Moore also contends defendants interfered with and denied him access to the courts by taking his legal papers and legal research and not returning it to him.

7

Moore alleges that, on November 3, 2010, there was a shake down of the C dorm (Docs. 1, 21). Moore alleges that, after the inmates were strip-searched, they were removed from the dorm; when they returned, their belongings were strewn all over the dorm floor (Docs. 1, 21). Moore alleges that, when he gathered his things, his legal mail and research were missing (Doc. 1). Later, Moore found some of his legal mail and research in a trash can, but never found all of it (Docs. 1, 21).

It is clearly established that prisoners have a constitutionally protected right of access to the courts. Brewer v. Wilkinson, 3 F.3d 816, 920-21 (5th Cir. 1993), cert. den., 510 U.S. 1123, 114 S.Ct. 1081 (1994), and cases cited therein. Interference with access to the courts may constitute the deprivation of a substantive constitutional right, as well as a potential deprivation of property without due process, and may give rise to a claim for relief under §1983. Any deliberate impediment to access, even a delay of access, may constitute a constitutional deprivation. Jackson v. Procunier, 789 F.2d 307, 310-11 (5th Cir. 1986). Also. Crowder v. Sinyard, 884 F.2d 804, 811 (5th Cir. 1989), cert. den., 498 U.S. 924, 110 S.Ct. 2617 (1990). Prison officials cannot take actions, such as taking or destroying legal papers, which will result in effectively denying a prisoner access to the courts. Crowder, 884 F.2d at 811, and cases cited therein. Also, Hodge v. Prince, 730 F.Supp. 747, 751 (N.D.Tex. 1990), aff'd,

923 F.2d 853 (5th Cir. 1991).

To make out a claim that his constitutional right of access to the courts has been violated, a plaintiff must demonstrate that his position as a litigant was prejudiced by his denial of access to the courts. Eason, 73 F.3d at 1328. The main concern is protecting the ability of an inmate to prepare a petition or complaint. Bounds v. Smith, 430 U.S. 817, 828 n.17, 97 S.Ct. 1491, 1498 n. 17 (1977).

Moore contends he lost his writ of certiorari to the United States Supreme Court and his "appeal to the U.S. Ninth Circuit Court of Appeals from the U.S. Fifth Circuit Court of Appeals" (Doc. 13). Moore alleges that, because his legal papers were destroyed, he did not meet his filing deadlines (Doc. 13). However, Moore has not alleged or shown what case he had in the Ninth Circuit, and none has been found. Also, Moore has not alleged or shown specifically which case was prejudiced in the Fifth Circuit, and in which case he was unable to file a writ of certiorari. Therefore, although Moore alleges prejudice arising from the alleged destruction of his legal papers, he has failed to support that allegation with any summary judgment evidence or specific factual allegations.

Defendants show, in identical affidavits, that they have no knowledge of the destruction of Moore's legal documents. In their statement of undisputed facts, defendants state they do not have

any knowledge as to what may have led to the loss of Moore's legal documents during the shakedown of his cell.

Since Moore failed to support his allegations as to the destruction of his legal documents with proper summary judgment evidence, there are no genuine issues of material fact which would preclude a summary judgment. Therefore, defendants' motion for summary judgment should be granted on this issue, also.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED and Moore's action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 16 day of August 2012.

```
                              _____
                                    JAMES D. KIRK
                              UNITED STATES MAGISTRATE JUDGE
```